1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BENJAMIN J. VALLES,

          Petitioner,

   v.

DONALD R. HOLBROOK,

          Respondent.

CASE NO. 2:22-cv-01250-TSZ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 6, 2023

      The District Court has referred this petition for a writ of habeas corpus to Chief United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

      Petitioner Benjamin J. Valles challenges his 2018 conviction and sentence for first degree assault and first degree robbery in King County superior court. Petitioner has raised two claims for relief in his petition, one asserting ineffective assistance of trial counsel and one asserting that the State violated his right to a unanimous verdict by a jury. These claims were addressed on the

merits by the state courts who did not unreasonably apply clearly established federal law when they concluded that petitioner was not entitled to relief. Therefore, neither of petitioner's claims warrant granting his petition. Accordingly, the Court recommends that the habeas petition be denied.

## BACKGROUND

### I.    Factual Background

On December 12, 2018, in the King County superior court, a jury found petitioner guilty of first degree assault and first degree robbery and returned special verdicts that he was armed with a deadly weapon. Dkt. 14-1 at 33, Ex. 2. On February 19, 2019, petitioner was sentenced to a total incarceration period of 325 months. *Id*. at 36. Division One of the Court of Appeals of Washington ("Division One") summarized the facts of petitioner's case as follows:

> On October 16, 2017, Anthony Hale was walking home from Beacon Hill light rail station when a man stabbed him in the neck and mouth. The man said, "give me your fuckin' wallet or I'll kill you." Hale called 911 and described the man as Hispanic with tattoos above his eyebrows. Hale initially thought he had only been punched. Police responded and paramedics took Hale to Harborview Medical Center.
>
> Between 1:00 p.m. and 1:30 p.m., Louis Mousseau arrived at his church located half a block away from the crime scene. He saw a man in the alleyway tell a woman, "We have to get out of here, they're on their way." A nearby home surveillance video also captured a man and a woman walking down the alleyway at 1:30 p.m. Mousseau heard sirens and gave police a description of the man he saw in the alleyway. Mousseau did not notice if the man had any tattoos and did not see either the man or the woman holding anything in their hands.
>
> Elizabeth Santiago, a King County Metro bus driver, was driving when she received a police alert with a description of a suspect with tattoos around his eyes. At 1:40 p.m., Santiago saw a man with tattoos around his eyes board her bus. Santiago flagged two police officers. When the officers approached the bus, Valles got off. Officers contacted Valles at a bus stop. They frisked Valles and found no weapons.
>
> Officers brought Mousseau to the bus stop and asked if he recognized Valles. He identified Valles as the man in the alleyway. Officers showed Hale a

photomontage containing Valles's photo. When Hale identified someone other than Valles as his attacker, they released Valles. Officers found Hale's wallet in the alley. They did not find a knife. Three days later, police arrested Valles.

At trial, Ai-Lien Ton, a latent fingerprint examiner trainee for the Seattle Police Department, testified that she conducted the print analysis in this case. Ton matched Valles's fingerprint with a latent print from a credit card in Hale's wallet. After she matched the print, she sent her work to her supervisor for review. Ton testified that three individuals, her supervisor, trainer, and another examiner independently reviewed her work and verified her findings. None of these individuals testified.

The jury convicted Valles of first degree assault and first degree robbery, and returned special verdicts finding Valles was armed with a deadly weapon.

Dkt. 14-1 at 44–45, Ex. 3.

## II.    Procedural History

Petitioner challenged his convictions and sentence on direct appeal. *See* Dkt. 14-1, Ex. 4. Division One affirmed petitioner's conviction on June 22, 2020. *See* Dkt. 14-1, Ex. 3. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *See* Dkt. 14-1, Ex. 7. On November 4, 2020, the state supreme court denied petitioner's petition for review without comment. *See* Dkt. 14-1, Ex. 8. Division One issued its mandate on December 14, 2020. Dkt. 14-1, Ex. 10.

Prior to the issuance of the mandate, petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief on December 9, 2020. Dkt. 14-1, Ex. 9. He supplemented the PRP with an additional ground on March 22, 2021. Dkt. 14-1, Ex. 11. Division One dismissed the PRP on June 25, 2021. Dkt. 14-1, Ex. 14. On July 20, 2021, petitioner sought discretionary review from the state supreme court, which was denied by the deputy commissioner of the state supreme court on October 22, 2021. Dkt. 14-1, Ex. 16. Division One issued its certificate of finality on January 20, 2022. Dkt. 14-1, Ex. 17.

1    On September 22, 2022, petitioner initiated this case. Dkt. 5. In his petition, petitioner

2    raises the following claims for relief:

3        1.  Petitioner was denied his Sixth Amendment right to effective assistance of
         counsel and right to confrontation when counsel failed to object to evidence of an
4        out-of-court statement from a non-testifying expert witness that was inadmissible
         hearsay.
5
6        2.  The State violated petitioner's constitutional right to jury unanimity when it
         failed to present sufficient evidence to support the "display of a deadly weapon"
         means of committing first degree robbery included in the jury instruction on the
7        elements of the offense.

8    *Id*. at 8, 11. On November 21, 2022, respondent filed, and served on petitioner, a response to the

9    petition. Dkt. 13. In the response, respondent asserts that the state court's adjudication of the

10   claims raised in the petition was not contrary to, or an unreasonable application of, clearly

11   established federal law. *Id*. Petitioner has not filed a reply. *See* Dkt.

12                                **DISCUSSION**

13   Petitioner presents two grounds for habeas corpus relief. Dkt. 5. Respondent concedes

14   that petitioner has exhausted his state court remedies as to these claims and that they are timely.

15   *See* Dkt. 13 at 4–5. As such, the Court will address these claims on the merits after setting forth

16   the standard of review under AEDPA.

17   **I.     Legal Standard – AEDPA Merits Review**

18   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation

19   of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28

20   U.S.C.] §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). 28 U.S.C. §

21   2254 is a "difficult to meet and highly deferential standard for evaluating state-court rulings,

22   which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*,

23

24

REPORT AND RECOMMENDATION - 4

1    563 U.S. 170, 181 (2011) (internal quotations and citations omitted). The petitioner carries the

2    burden of proof. *Id*.

3          The first exception, § 2254(d)(1), allows habeas relief on the basis that an adjudication

4    "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

5    established Federal law, as determined by the Supreme Court of the United States." The Supreme

6    Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent

7    if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court

8    on a question of law or (2) confronts facts "materially indistinguishable" from relevant Supreme

9    Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

10   Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that

11   court concludes in its independent judgment that the relevant state-court decision applied clearly

12   established federal law erroneously or incorrectly. Rather, that application must also be

13   unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable

14   application of Supreme Court precedent occurs "if the state court identifies the correct governing

15   legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular

16   state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an

17   unreasonable application of Supreme Court precedent "if the state court either unreasonably

18   extends a legal principle from [Supreme Court] precedent to a new context where it should not

19   apply or unreasonably refuses to extend that principle to a new context where it should apply."

20   *Id.*

21         The second § 2254 exception, § 2254(d)(2), provides for habeas relief if the adjudication

22   "resulted in a decision that was based on an unreasonable determination of the facts in light of

23   the evidence presented in the State court proceeding." Federal habeas courts must presume the

24

1    correctness of state courts' factual findings unless applicants rebut this presumption with "clear

2    and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under

3    § 2254(d) is "limited to the record that was before the state court that adjudicated the claim on

4    the merits." *Pinholster*, 563 U.S. at 180–81.

5    **II.    Claim 1**

6         In claim 1, petitioner argues that trial counsel was ineffective for failing to object to

7    evidence of an out-of-court statement from a non-testifying expert witness that was inadmissible

8    hearsay. Dkt. 5 at 8. Specifically, petitioner contends that counsel should have objected on both

9    hearsay grounds and Sixth Amendment confrontation grounds when the latent fingerprint

10   examiner trainee testified that her supervisor, trainer, and another examiner independently

11   reviewed her work and verified her findings that petitioner's latent fingerprint was left on a card

12   in the victim's wallet. *Id*. None of these individuals testified at trial. *Id*. Respondent counters that

13   the state court's determination that counsel was not ineffective with respect to this claim is

14   neither contrary to, or an unreasonable application of, clearly established federal law. Dkt. 13 at

15   13–17.

16        The primary question when reviewing a claim of ineffective assistance of counsel under

17   AEDPA is not whether counsel's representation was deficient, or whether the state court erred in

18   analyzing the claim, but whether the state court adjudication of the claim was unreasonable.

19   *Schriro v. Landrigan*, 550 U.S. 465, 472–73 (2007). Because counsel has wide latitude in

20   deciding how best to represent a client, review of counsel's representation is highly deferential

21

22

23

24

and is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986). The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman,* 477 U.S. at 375; *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this case, the state courts applied the *Strickland* standard in determining that petitioner had not demonstrated that counsel was ineffective with respect to this claim. Dkt. 14-1 at 45–48, Ex. 3. Specifically, Division One found:

> First, we address the issue of whether defense counsel's conduct was deficient by failing to object to Ton's testimony because it was inadmissible

hearsay under ER 802 or violated Valle's [sic] Sixth Amendment right to confrontation.

Hearsay is an out of court statement offered to prove the truth of the matter asserted. [ER 801(c).] Hearsay is inadmissible unless an exception or exclusion applies. [ER 802.] "Generally, one expert may not relay the opinion of another nontestifying expert without running afoul of the hearsay rule." [*State v. Brown*, 145 Wn. App. 62, 73, 184 P.3d 1284 (2008).]

Valles cites *State v. Wicker* in where a fingerprint expert testified that a supervisor verified her fingerprint analysis. [66 Wn. App. 409, 411–12, 832 P.2d 127 (1992).] In *Wicker*, we determined the testimony about the supervisor's verification was inadmissible hearsay because it was an assertion that the supervisor agreed the fingerprints matched.

Ton's testimony was hearsay. But, we cannot say that defense counsel was deficient by not objecting on hearsay grounds. If defense counsel had successfully objected on hearsay grounds, the State would have likely called the supervisor, trainer, and other examiner to testify. The testimony would likely confirm Ton's results and bolster the State's case. It would also place greater focus on the fingerprint evidence and perhaps cause the jury to place more importance on it. It is conceivable that defense counsel's decision not to object on hearsay grounds was a "legitimate tactic."

For the same reason, it is conceivable that defense counsel's decision not to object on Sixth Amendment grounds was a legitimate tactic. The Sixth Amendment provides criminal defendants the right to confront the witnesses against them. [U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); WASH. CONST. art. I, § 22.] Admission of a testimonial statement violates a defendant's right to confront the witness unless the witness is unavailable and the defendant previously had an opportunity to cross-examine the witness regarding the statement. [*Crawford*, 541 U.S. at 68.] Here, if defense counsel had objected on confrontation clause grounds, the State would likely have called the other experts to testify that they confirmed Ton's results. Because defense counsel's decision not to object on hearsay or confrontation grounds was a conceivable legitimate trial tactic, we cannot say their performance was deficient.

Next, even if defense counsel's performance was deficient, it did not prejudice Valles. Absent the fingerprint evidence, ample evidence supports Valle's

1

2

[sic] conviction, including Mousseau's identification of Valles, and the neighbor's personal surveillance video of Valles in the alleyway.

Dkt. 14-1 at 45–48, Ex. 3 (some footnotes omitted).

As an initial matter, it is odd that the state court, having concluded that the hearsay was improper, then assumed that the expert who never testified would "confirm Ton's results." Nevertheless, the Court is limited to the standard in *Strickland v. Washington* and its progeny when reviewing a state court decision. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citing *Strickland*, 466 U.S. at 668). It is not enough that a federal habeas court concludes "in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 76 (internal quotation mark omitted). Rather, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). And here, *Strickland* sets a high bar for relief. *Id*. at 105. Under AEDPA's deferential standard, that bar is doubly difficult to clear. *Id*.

With this framework in mind, the Court turns to petitioner's claim that he received ineffective assistance of counsel.

In his petition, petitioner fails to show the state court's consideration of his claim was contrary to, or an unreasonable application of, clearly established federal law. Petitioner fails to support the contention that his counsel's failure to object resulted in assistance falling below an objective standard of reasonableness. "Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 688–89). Further, "the relevant inquiry under *Strickland* is not what defense counsel should have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.

1    1998). Here, after acknowledging that the testimony at issue from Ton was in fact hearsay,

2    Division One found that petitioner showed neither deficient performance nor prejudice stemming

3    from counsel's choice not to object to Ton's testimony. Based on the trial record and without the

4    benefit of hearing from defense counsel directly in post-conviction proceedings regarding her

5    trial strategy, the state court found that defense counsel's choice may have been a reasonable

6    tactical decision, designed to avoid further testimony that would confirm Ton's results and

7    bolster the State's case. Dkt. 14-1 at 47, Ex. 3. As the state court concluded, that further

8    testimony could have placed a greater focus and importance on the fingerprint evidence for the

9    jury. *Id*. The court applied that same reasoning to counsel's strategic decision not to object on

10   confrontation clause grounds. *Id*. at 47–48. Moreover, the state court concluded that, based on

11   the evidence supporting petitioner's conviction, petitioner failed to establish that he was

12   prejudiced by counsel's decision not to object. *Id*. at 48. On habeas review petitioner has not

13   provided anything to demonstrate that trial counsel's failure to object here was an error that

14   changed the outcome of the trial. *Strickland*, 466 U.S. at 689. Thus, the Court recommends that

15   federal habeas relief on petitioner's ineffective assistance of counsel claim based on failure to

16   object to the fingerprint examiner's hearsay testimony be denied.

17   **III.    Claim 2**

18          Petitioner contends the State violated his right to jury unanimity because there was no

19   evidence to establish the "display of a deadly weapon," one of the three means of committing

20   first degree robbery set forth in the jury instructions. Dkt. 5 at 11. In his response, respondent

21   characterizes this claim as a challenge not only to petitioner's right to a unanimous verdict by a

22   jury but also to the sufficiency of the evidence. Specifically, respondent argues that petitioner's

23   challenge to the state law on jury unanimity is not based upon clearly established federal law

24

and, nevertheless, there was sufficient evidence to support a conclusion that petitioner displayed what appeared to be a deadly weapon during the robbery. Dkt. 13 at 19–23.

Here, Division One reasonably decided this claim on the merits. The court held:

Valles challenges his conviction for robbery in the first degree claiming the State violated his constitutional right to jury unanimity because evidence does not support one of the three means of committing the crime described in the court's instructions, the display of a deadly weapon.

Article I, section 21 of the Washington State Constitution guarantees criminal defendants the right to a unanimous jury verdict. "This right may also include the right to an unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime." [*State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).] Generally, an alternative means crime "is one by which the criminal conduct may be proved in a variety of ways." [*Owens*, 180 Wn.2d at 96.]

"When a crime can be committed by alternative means, express jury unanimity as to the means is not required where each of the means is supported by substantial evidence." [*State v. Gonzalez*, 133 Wn. App. 236, 243, 148 P.3d 1046 (2006).] In this circumstance, "we infer that the jury rested its decision on a unanimous finding as to the means." [*State v. Ortega-Martinez*, 124 Wn.2d 702, 708 (1994).] If the record does not include sufficient evidence to support one alternative means, a particularized expression of jury unanimity is required. "Evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [*State v. Garcia Gomez*, 7 Wn. App. 2d 441, 455, 434 P.3d 89 (2019).]

RCW 9A.56.200(1)(a) provides that a person is guilty of first degree robbery if, in the commission [of] a robbery or immediately after, they are (i) "armed with a deadly weapon"; or (ii) "displays what appears to be a firearm or

other deadly weapon"; or (iii) "inflicts bodily injury." So, first degree robbery is an alternative means crime.

The jury was instructed that to convict Valles of first degree robbery, it needed to find all six of the following elements beyond a reasonable doubt:

(1) That on or about October 16, 2017, the defendant unlawfully took personal property from the person or in the presence of another;
(2) That the defendant intended to commit theft of the property;
(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;
(4) That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
(5) (a) That in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon; or
(b) That in the commission of these acts or in immediate flight therefrom the defendant displayed what appeared to be a deadly weapon; or
(c) That in the commission of these acts or in immediate flight therefrom the defendant inflicted bodily injury; and
(6) That any of these acts occurred in the State of Washington.

Element five includes three alternative means. The jury instruction stated, "To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (5)(a), or (5)(b), or (5)(c), has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt."

Valles and the State agree that sufficient evidence supports (5)(a) and (5)(c) because Hale was stabbed and injured with a deadly weapon. But, they disagree on whether sufficient evidence supports (5)(b), "the defendant displayed what appeared to be a deadly weapon."

Valles contends insufficient evidence supports the display element because Hale did not see a weapon and thought he had only been punched. Valles asserts, "A knife can be concealed in the hand, such that it is not displayed to the victim."

While a weapon can be concealed from view, we have found that the display element may be satisfied by a "physical manifestation indicating there is a weapon," such as a gesture. The display element is also met where the defendant verbally indicates the presence of a weapon. For example, in *State v. Kennard*, even though the victim did not actually see the weapon, the court found sufficient evidence where the defendant said he had a gun and patted his hip. [101 Wn. App. 533, 537–40, 6 P.3d 38 (2000).] In *State v. Henderson*, witnesses did not see a gun, but the court found sufficient evidence where the defendant said, "I have this," and held

his hand in his pocket as if he had a weapon. [34 Wn. App. 865, 867, 664 P.2d 1291 (1983).]

The State contends that, by stabbing Hale, Valles made a physical manifestation indicating the presence of a deadly weapon. We agree. Valles stabbed Hale and then said, "give me your fuckin' wallet or I'll kill you." Considering the evidence in the light most favorable to the State, the combination of Valles's physical action and verbal threat are sufficient evidence to support a jury finding that he displayed a deadly weapon.

Dkt. 14-1 at 48–51, Ex. 3.

In the instant petition, petitioner first claims that his conviction for first degree robbery under Washington law violates his constitutional right to a unanimous verdict by a jury. Dkt. 5 at 11. The Supreme Court has held that in state court proceedings for serious crimes, there is a right to have all twelve jurors agree that a defendant is guilty, so that one single vote to acquit renders a guilty verdict unconstitutional. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). However, the Court has never held that the jury must also be unanimous as to the means by which a defendant committed the crime, in a case where alternative means are argued to the jury. Indeed, the Court has distinguished between unanimity that the defendant committed the crime of conviction (required by *Ramos*) and unanimity as to *how* the defendant committed the crime (not required by *Ramos*). *See Schad v. Arizona*, 501 U.S. 624, 630 (1991) (plurality) ("even assuming a requirement of jury unanimity *arguendo*, that assumption would fail to address the issue of what the jury must be unanimous about. Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings."). As such, there remains "no general requirement that the jury reach

1   agreement on the preliminary factual issues which underlie the verdict." *Id.* at 632. As the

2   Supreme Court has explained,

3       A federal jury need not always decide unanimously which of several possible sets
        of underlying brute facts make up a particular element, say, which of several
4       possible means the defendant used to commit an element of the crime. *Schad v.
        Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality
5       opinion); *Anderson v. United States*, 170 U.S. 481, 499–501, 18 S. Ct. 689, 42 L.Ed.
        1116 (1898). Where, for example, an element of robbery is force or the threat of
6       force, some jurors might conclude that the defendant used a knife to create the
        threat; others might conclude he used a gun. But that disagreement—a
7       disagreement about means—would not matter as long as all 12 jurors unanimously
        concluded that the Government had proved the necessary related element, namely
8       that the defendant had threatened force. *See McKoy v. North Carolina*, 494 U.S.
        443, 449, 110 S. Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring).

9

10  *See also Richardson v. United States*, 526 U.S. 813, 817 (1999).

11      Accordingly, there is no clearly established federal right to a jury that is unanimous

12  regarding the legal means by which a crime was committed. Further, Division One's

13  determination that the alleged error by the trial court with respect to instructing the jury did not

14  violate Washington law is a determination of state law that is also binding on the federal courts.

15  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

16  interpretation of state law . . . binds a federal court sitting in habeas corpus."). Since the state

17  courts determined that there was no error, and petitioner has not shown how this alleged error

18  violated clearly established federal law, petitioner cannot obtain federal habeas relief on this

19  claim. The Court recommends this part of his claim be denied.

20      Further, petitioner seemingly argues here that there was insufficient evidence to support a

21  guilty verdict for first degree robbery based on the alternative means that "defendant displayed

22

23

24

REPORT AND RECOMMENDATION - 14

1    what appeared to be a deadly weapon." Dkt. 5 at 11; *see also* Dkt. 14-1 at 50, Ex. 3. Division

2    One rejected this argument.

3        When evaluating a claim of insufficiency of the evidence to support a conviction, the

4    question is not whether the Court itself believes the evidence establishes guilt. "Instead, the

5    relevant question is whether . . . *any* rational trier of fact could have found the essential elements

6    of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

7    (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992). The Court must "view the

8    record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d

9    610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990). The constitutional sufficiency of

10   evidence review is sharply limited. *Wright*, 505 U.S. at 296. The jury is entitled to believe the

11   State's evidence and disbelieve the defense's evidence. *Id*.

12       Although federal courts look to state law for the substantive elements of the criminal

13   offense, the minimum amount of evidence that the Due Process Clause requires to prove the

14   offense is purely a matter of federal law. *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012);

15   *Jackson*, 443 U.S. at 324 n.16. It is exceedingly difficult for a petitioner to demonstrate

16   insufficiency of the evidence on federal habeas review:

17       *Jackson* claims face a high bar in federal habeas proceedings because they are
18       subject to two layers of judicial deference. First, on direct appeal, "it is the
         responsibility of the jury—not the court—to decide what conclusions should be
19       drawn from evidence admitted at trial. A reviewing court may set aside the jury's
         verdict on the ground of insufficient evidence only if no rational trier of fact could
20       have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, __, 132 S. Ct. 2, 4 (2011)
         (*per curiam*). And second, on habeas review, "a federal court may not overturn a
         state court decision rejecting a sufficiency of the evidence challenge simply because
21       the federal court disagrees with the state court. The federal court instead may do so
         only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting
22       *Renico v. Lett*, 559 U.S., __, __, 130 S. Ct. 1855, 1862 (2010).

23   *Coleman*, 566 U.S. at 651.

24

1    Washington's test for determining the sufficiency of evidence is identical to that set forth

2    by the Supreme Court in *Jackson*. In Washington, evidence is sufficient if after viewing the

3    evidence in the light most favorable to the state, any rational trier of fact could have found guilt

4    beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220–22, 616 P.2d 628 (Wash. 1980).

5    When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences

6    from the evidence must be drawn in favor of the State and interpreted most strongly against the

7    defendant. *State v. Partin*, 88 Wn.2d 899, 906–07, 567 P.2d 1136 (Wash. 1977).

8    Here, as found by the state court, when petitioner stabbed the victim in the neck, he

9    "made a physical manifestation indicating the presence of a deadly weapon." Dkt. 14-1 at 51, Ex.

10    3. More specifically, the court recognized that petitioner stabbed the victim and then said, "give

11    me your fuckin' wallet or I'll kill you." *Id*. As a result, the state court found that the combination

12    of petitioner's physical action and threatening words was sufficient to support the jury's finding

13    that petitioner displayed a deadly weapon. *Id*. This factual finding made by the state court of a

14    "physical manifestation indicating the presence of a deadly weapon" is, while at best tenuous,

15    one that this federal habeas court must presume correct unless petitioner can rebut it with "clear

16    and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). Petitioner has not done so here. Thus,

17    after viewing the evidence in the light most favorable to the State and assuming the jury resolved

18    all conflicts in a manner that supports the verdict, the Court finds that a rational trier of fact

19    could have inferred that petitioner displayed what appeared to be a deadly weapon during the

20    robbery. The state court's conclusion that these circumstances were sufficient to support the

21    guilty verdict is not objectively unreasonable based on the evidence presented at trial.

22    Accordingly, the Court concludes that petitioner has failed to show that the state courts'

23    adjudication of this claim was contrary to, or an unreasonable application of, clearly established

24

1   federal law, or resulted in a decision that was based on an unreasonable determination of the

2   facts in light of the evidence presented in the State court proceeding. The Court recommends that

3   federal habeas relief on this claim be denied.

4                                    **IFP ON APPEAL**

5          The Court recommends that petitioner's *in forma pauperis* ("IFP") status not be revoked

6   for purposes of an appeal of this matter. It is arguable that the court of appeals may consider that

7   the state court's reasoning is insufficient, and that plaintiff has met his very heavy *Strickland*

8   burden. At least, appealing this Court's decision would not be frivolous or lacking in good faith.

9   Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A petitioner satisfies the "good

10  faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is

11  frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551

12  (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Because an appeal from this

13  matter would not be frivolous, IFP status should granted for purposes of any appeal.

14             **CERTIFICATE OF APPEALABILITY and EVIDENTIARY HEARING**

15         Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

16  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

17  (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner

18  has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

19  2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could

20  disagree with the district court's resolution of his constitutional claims or that jurists could

21  conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

22  *El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

23

24

REPORT AND RECOMMENDATION - 17

1    Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of

2    appealability with respect to this petition.

3          Regarding whether petitioner is entitled to an evidentiary hearing, the decision to hold a

4    hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

5    "[A] federal court must consider whether such a hearing could enable an applicant to prove the

6    petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

7    *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. §

8    2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v.*

9    *Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations would not entitle

10   petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the

11   record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

12   court is not required to hold an evidentiary hearing." *Id.*; *see also Pinholster,* 563 U.S. 170.

13   "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state

14   court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Under this standard, the

15   Court finds it unnecessary to hold an evidentiary hearing.

16                                    **CONCLUSION**

17          For the above stated reasons, the Court concludes that the habeas petition (Dkt. 5) should

18   be denied as petitioner has not shown the state courts' adjudication of the two claims presented

19   was contrary to, or an unreasonable application of, clearly established federal law. The Court

20   also finds an evidentiary hearing is not necessary. Therefore, the Court recommends the petition

21   be denied and a certificate of appealability not be issued. The Court also recommends that IFP

22   status be granted for purposes of any appeal.

23

24

1    Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

2  shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.

3  R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

4  *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of

5  those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda*

6  *v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time

7  limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February

8  6, 2023, as noted in the caption.

9    Dated this 23rd day of January, 2023.

10

11    J. Richard Creatura
       Chief United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24